```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Joe Hand Promotions, Inc.,      :

         Plaintiff,             :

    v.                          :      Case No. 2:14-cv-1178

Jessica Buckman, et al.,        :      JUDGE ALGENON L. MARBLEY
                                       Magistrate Judge Kemp
         Defendants.            :
```

REPORT AND RECOMMENDATION

This matter is before the Court on a motion for default judgment filed by plaintiff Joe Hand Promotions, Inc. against defendants Jessica Buckman and Michael Hutton.  The Clerk entered default against these defendants on September 9, 2014.  For the following reasons, the Court will recommend that the motion for default judgment be granted.

I.  Background

JHP is an international distributor of sports and entertainment programming.  According to the complaint, JHP was granted the exclusive nationwide commercial distribution (closed-circuit) rights to broadcast the Ultimate Fighting Championship 160, Cain Velasquez v. Antonio Silva Fight Program shown on Saturday May 25, 2013.  Defendants allegedly broadcast the program at MVP Sports Bar & Billiards in Zanesville, Ohio without pruchasing a sublicense from JHP to do so.

JHP asserts claims under the Communications Act of 1934, as amended, 47 U.S.C. 605, et seq., and the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. 553, et seq.  JHP also asserts a claim for conversion.

Ms. Buckman and Mr. Hutton were served with a summons, which was returned executed.  After they failed to file an answer, JHP

filed an application for entry of default.  The Clerk entered default on September 9, 2014.

## II.  Legal Standard

Federal Rule of Civil Procedure 55(b) authorizes a court to enter default judgment against a party whose default has been entered by the clerk.  Once default has been entered, a defaulting defendant is considered to have admitted all the well-pleaded allegations relating to liability.  See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995).

The mere determination of defendant's liability does not, however, automatically entitle plaintiff to default judgment.  The decision to grant default judgment falls within a court's discretion.  10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2685 (3d ed.).  In determining whether to enter judgment by default, courts often consider such factors as

> the amount of money potentially involved; whether material facts or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt.  Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

Id. (footnotes omitted).

While the well-pleaded factual allegations of the complaint are taken as true when a defendant is in default, damages are not.  Where damages are unliquidated, a default admits only defendant's liability and the amount of damages must be proved.  Id.  The court may conduct an evidentiary hearing to determine damages but such a hearing is not a prerequisite to the entry of default if damages are contained in documentary evidence or detailed affidavits allowing a decision on the record.  Joe Hand

Promotions, Inc. v.  RPM Management Co. , LLC, 2011 WL 5389425 (S.D. Ohio Nov. 7, 2011), *1.

### III.  The Motion for Default

JHP has brought claims under both 47 U.S.C. §605 and 47 U.S.C. §553. In support of its motion, JHP has submitted the affidavit of its company president, Joe Hand, Jr.  According to Mr. Hand, JHP is a closed-circuit distributor of sports and entertainment programming.  JHP purchased the rights to the Ultimate Fighting Championship 160, which was broadcast on May 25, 2013.  JHP also submitted the affidavit of investigator Laurence McDonald who was present at the MVP Sports Bar from 10:50 p.m. on May 25, 2013 to 12:30 a.m. on May 26, 2013. According to Mr. McDonald, he witnessed a portion of the program, including the under-card bout between Junior dos Santos and Mark Hunt being broadcast on one of the bar's 100' plus flat screen televisions.  MVP Sports Bar was not licensed by JHP to show the program.  According to the rate card for the program, the commercial fee which would have been charged for MVP to broadcast the program was $1,250.00.  This rate is based on MVP's having a capacity of 150 people.

JHP also argues that it is entitled to an increased damages award because the defendants acted willfully.  To support its claim of willful conduct, Mr. Hand states in his affidavit that it would be impossible to mistakenly or accidentally intercept the program.  He explains in detail various methods of piracy which would have to be used.

In further support of its request for such damages, JHP argues that the circumstances demonstrate that the violation was committed for commercial advantage or private financial gain. For example, Mr. Hand notes that Mr. McDonald made three separate head counts of 48, 50 and 47 while there and reported that the program was being shown on 4 of the 11 televisions.  Recognizing

that some courts have held that this element requires evidence of a cover charge, advertisement, or an increase in food and drink prices, he explains that, to avoid detection, it would be extremely unlikely for a pirate establishment to take such steps to promote the programming.

JHP seeks $50,000 in statutory and enhanced damages under 47 U.S.C. §605 and $25,000 in statutory and enhanced damages under 47 U.S.C. §553.  JHP also seeks $1375.00 in attorneys' fees and costs of $400.00.

## IV. <u>Analysis</u>

As noted above, JHP has brought claims under both 47 U.S.C. §605 and 47 U.S.C. §553. Section 605 prohibits the unauthorized interception of radio communications and has been interpreted as outlawing satellite signal piracy.  This section permits recovery of actual or statutory damages of between $1,000 and $10,000 for each violation.  47 U.S.C. §605(e)(3)(C)(i)(I) and (II).  Section 553 makes it illegal to intercept or receive without authorization any communication service offered over a cable system, including the theft of programming directly from a cable system.  Under this section, a party may recover actual damages or, in the alternative, an award of statutory damages ranging from $250 to $10,000 for all violations involved.  47 U.S.C. §553(c)(3)(A)(I) and (ii).  Both sections are strict liability statutes.  Also, under both sections, where a court finds a willful violation committed for commercial advantage or private financial gain, a court may, in its discretion, increase the award of actual or statutory damages by an amount not to exceed $50,000 for violations of §553 or $100,000 for violations of §605.  47 U.S.C. §553(c)(3)(B); 47 U.S.C. §605(e)(3)(C)(ii)  Both sections also permit an award of costs and reasonable attorneys' fees.  47 U.S.C. 605(e)(3)(B)(iii); 47 U.S.C. 553(c)(2)(C).

Accepting as true all the well-pleaded allegations of JHP's

complaint, it has established the elements required to state a claim under these statutes. Specifically, JHP had the exclusive nationwide television distribution rights to the program. Further, defendants unlawfully intercepted and exhibited the program willfully and for purposes of direct or indirect commercial advantage or financial gain. Consequently, the Court finds that JHP has established that defendants violated §§605 and 553 and will recommend that the motion for default judgment be granted.

When a defendant is liable under both statues, however, a plaintiff may recover under only one section. International Cablevision, Inc. v. Sykes, 75 F.3d 123, 129 (2nd Cir. 1996). Generally, §605 is applied because it allows for a higher recovery. RPM Managament, 2011 WL 5389425, at *2, citing Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1004 (2nd Cir. 1993). Consequently, the Court recommends that JHP be limited to recovery under only §605.

Under that provision, JHP seeks to recover statutory damages in the amount of $50,000. When determining an award of statutory damages, courts typically consider the cost of the right to broadcast the program and the plaintiff's cost to monitor and investigate its broadcasting rights. Joe Hand Promotions v. Fazio, 2012 WL 1036134, *3 (N.D. Ohio Jan. 31, 2012), citing Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 918 (6th Cir. 2001). The amount of damages awarded under this statute is within the Court's discretion. Id. at *3. According to Mr. Hand's affidavit, based on the maximum capacity of 150 people, JHP would have charged defendants $1,250 for a license to broadcast the program. JHP has not provided any evidence of the cost of monitoring and investigating its broadcast rights specific to this case, although Mr. Hand does state generally in his affidavit that JHP retains auditors and law enforcement

personnel at great expense.  Given the state of the record, the Court can conclude only that JHP lost $1,250.00 as a result of defendants' conduct.  Consequently, the Court will recommend an award of statutory damages in that amount for defendants' violation of §605.

This brings the Court to the issue of enhanced damages based on defendants' alleged willful conduct.  "Conduct is 'willful' if it shows 'disregard for the governing statute and an indifference to its requirements.'"  RPM Management, 2011 WL 5389425, at *3, quoting Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985).  On this issue, courts look to evidence of a cover charge, advertisement of the program, an increase in food or drink prices, and the size of the crowd in determining whether a violation was committed for commercial advantage or private financial gain.  Id. at *3, citing J & J Sports Production, Inc. v. Lukes, 2010 WL 4105663 (N.D. Ohio Oct. 18, 2010).  Courts have also drawn an inference from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.  Joe Hand Promotions v. Easterling, 2009 WL 1767579, *6 fn. 2 (N.D. Ohio June 22, 2009).

JHP has not identified the specific amount of damages it seeks for defendants' alleged willful conduct, having simply requested a total of $50,000 in damages under §605.  Based on Mr. McDonald's affidavit, approximately 50 people, or one-third of MVP's capacity crowd, were present on the evening of the broadcast at issue.  Further, the program was being shown on only four of MVP's eleven televisions.  Additionally, there is no evidence that defendants charged admission, increased prices, or openly advertised the broadcast.  In short, there is minimal evidence directed to the issue of defendants' commercial advantage or financial gain.  Under such circumstances, some

courts have declined to award damages for alleged willful misconduct at all.  <u>Joe Hand v. Orim</u>, 2010 WL 3931108 (N.D. Ohio October 5, 2010); <u>Joe Hand v. Willis</u>, 2009 WL 369511 (N.D. Ohio February 11, 2009).

On the other hand, some courts, recognizing the deterrent intent of the statute, have found an award of enhanced damages appropriate under facts similar to this case.  These awards, however, typically bear some connection to the principal statutory award.  For example, in <u>Fazio</u>, 2012 WL 1036134, the Court found an enhanced damages award of twice the principal amount warranted, bringing the entire damages award to three times the amount defendants would have paid for the broadcast rights.

The Court finds the reasoning of <u>Fazio</u> persuasive and will recommend that it be applied here.  As the court stated in that case,

> ... the deterrence of future violations is one of the objectives of the statute.  Merely requiring defendants to pay the price they originally would have been charged to obtain legal authorization to display the Program does nothing to accomplish this objective of the statute.  In other words "[t]here would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." <u>Entertainmnet by J & J</u>, <u>Inc. v. Nina's Restaurant and Catering</u>, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002)
>
> ....
>
> Plaintiff has not adduced sufficient evidence to support its request of enhanced statutory damages beyond this amount.  While Plaintiff argues that Defendants' violation of Section 605(a) was willful and for commercial or financial gain, the evidence provided by Plaintiff fails to support a conclusion that an award of this magnitude is justified in this case.... While plaintiff is entitled to some enhanced damages given the allegations in the Complaint and the low probability that a commercial establishment could intercept the Program merely by chance, <u>see</u> <u>Al-Waha</u>,

> 219 F.Supp.2d 769, Plaintiff has not presented any allegations or evidence showing that Defendants' conduct was egregious enough to justify a more significant damages award, let alone an award of damages at or near the maximum allowed for a violation of Section 605.

Fazio, 2012 WL 1036134, at *3, *4.  The above scenario describes the case here.  Consequently, the Court concludes that an enhanced award of $2,500 would address the concerns raised by JHP while recognizing the limited evidence it provided as to defendants' willful conduct.

Further, the Court finds the circumstances of this case easily distinguishable from those in RPM Management, 2011 WL 5389425, which resulted in another Judge from this Court awarding JHP $25,000 in damages based on the defendant's alleged willful conduct.  The defendants in that case were found to have committed multiple violations.  No similar evidence has been presented in this case.  Consequently, the Court will recommend a total damages award of $3,750, or three times the amount defendants would have paid for the right to broadcast the program.

JHP also seeks attorneys' fees and costs. 47 U.S.C. §605(e)(3)(B)(iii) provides that the court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  JHP has submitted an affidavit of counsel claiming $1,375.00 in attorneys' fees and $400 in costs.  The Court has reviewed this information and finds that the requested costs and fees are reasonable.  Consequently, the Court will recommend an award of attorneys' fees and costs in the amount of $1,775.00.

## V. Recommendation

For the reasons stated above, it is recommended that the motion for default judgment (Doc. 10) be granted and that

judgment be entered against defendants in the amount of $3,750.00 in statutory damages and $1,775.00 for attorneys' fees and costs.

### VI.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge